### No. 11,958.

### CHARLES UNTER VS. METROPOLITAN NATIONAL BANK ET ALS.

If an act of sale for, at least, some consideration was not passed to defraud creditors with whom it was proposed to contract later, the subsequent contractors have no right to have it annulled.

In cases of fraud and simulation the conversations and admissions of the parties, even when not made in the presence of each other, their acts and actions are admissible as evidence, leaving to the court from all surrounding circumstances to judge of their weight as evidence.

A witness examined out of court before an officer authorized to receive his depositions, should remain until discharged and he should sign the depositions.

APPEAL from the Tenth Judicial Court for the Parish of Natchitoches. *Coco, J.*

---

*Chaplin, Breazeale & Chaplin* for Plaintiff, Appellee.

---

*I. J. Ringolsky, Pierson & Porter, Scarborough & Carver* for Defendants, Appellants.

Argued and submitted December 18, 1895.
Opinion handed down January 6, 1896.
Rehearing refused February 10, 1896.

The opinion of the court was delivered by

BREAUX, J.    The defendants, claiming as creditors of Mrs. C. Marder, separate in property from her husband and a public merchant, brought suits on their respective claims and made the statutory averments for writs of attachment.

Several days after this debtor's property had been attached, the defendants directed the sheriff to seize, under the writs of attachment in his hands, a stock of goods in another store. Charles Unter, claiming as owner of the goods thus attached, gave the sheriff an indemnity bond and took back the goods. He also enjoined the seizure and sale of this stock.

The answer of the attaching creditors to the petition of injunction denies that the goods were passed to Unter by sale or other transfer, and alleges that if there was any such transfer it was wholly fictitious, and it was fraudulent and null and void against creditors.

In 1892, 1893 and 1894 to February 6, the plaintiff was a partner of Mrs. Marder, wife of E. Marder, in Natchitoches. On the date last mentioned, he bought the half interest of his partner, valued at three thousand and fifty-four dollars and forty-eight cents, for two thousand five hundred and fifty dollars cash, and the deed called for, not the half interest, but the whole of the stock of which plaintiff claims, he was, at the time, the owner of the half.

Although the stated consideration was cash, only two hundred dollars were paid cash, and the remainder was represented by eight notes, payable in instalments in different amounts, signed by the plaintiff, as maker, in favor of the vendor.

In August, 1894, the Marders returned to Louisiana and opened a store in Natchitoches and another in Minden. For these stores, after August and prior to the winter of that year, he bought goods to the amount of ten thousand dollars. In Novembe they sold their stock in Minden in bulk to merchants and shipped the remainder to Natchitoches.

On the 10th of November E. Marder wired to Kendall Boot Co. advising them to protect themselves, as he was being pushed. The

representative of that firm wired back to the debtor, Marder, to give him a chattel mortgage. Marder replied that they were not legal in Louisiana, and suggested to his creditor to send his claim to an attorney with instructions to attach at once.

The firm, instead, sent a representative to Nachitoches, who found his firm preceded by another creditor, and an attachment levied on the remnant of the goods, which brought seven hundred dollars, while his indebtedness for goods bought in the previous summer and fall amounted to about eleven thousand dollars.

The creditor, Barmon, whose attachment was first in date, went to the store of plaintiff. He was not permitted to come in and examine the goods.

This witness says: "I was down in Natchitoches to bid on the goods of Marder, which I had attached. I went into Unter's store, but he did not like for me to come in much, and look around. Whenever I went there they were always in front of the store and would get in front of me so I could not get back into the store and examine the goods. I mean Charles Unter and his brother; they always managed to get around in front of me. However, I came in once when the covers were turned up in a place or two, and there I saw quite a lot of the goods that had been purchased from me and not paid for." Part of these goods had been bought in September, 1894.

The representative of the Kendall Company, with their attorneys, and the sheriff, called on the plaintiff at his store. Upon his refusal to permit his clerk to point out the goo s he had gotten from Marder, under their instruction the sheriff seized the entire stock of plaintiff.

It is in place to state that Kendall's representative, Van H. King, testified that he saw shoes in plaintiff's store which his house had sold to Marder. After the attachment an inventory was taken of plaintiff's stock; it amounted to three thousand three hundred and ninety-seven dollars. He bonded the goods.

The judgment of the District Court maintained the injunction and decreed him the owner of the property attached in the suit of the defendants; the writ of attachment was dissolved, reserving to the plaintiff the right to sue for damages. The judgment dismissed defendants' reconventional demand and reserved their right to institute a separate action against the plaintiff "for any goods or property it may be shown he had in his possession belonging to Mrs. C. Marder at the time or since the levy of the attachment."

In November, 1894, a few days prior to the attachment, Marder moved his store to another building.   Just prior to moving, a large part of his stock disappeared; the clerk noticed the disappearance in a night, but did not know what became of the goods.

In plaintiff's store labels were scraped off shoes, and Marder's name scraped off shoe boxes.   Many of the pants had no tags on them of sizes and prices.   At different times the plaintiff and other merchants bought shoes and other property from plaintiff's former partner.   They were hauled away in trunks during the day.

The defendants have appealed.

THE RECORD DISCLOSES PAYMENT OF A PRICE AS DECLARED IN THE DEED.

Plaintiff's purchase of the half interest of a store and the alleged termination of the previously existing partnership with the vendor, in the first place, has received our attention.

The sale was of the one-half, although the whole stock was referred to as the property sold, and the price was on terms of credit, as already stated.

In regard to the price, the first deed was drawn in accordance with the terms.   Through a mistaken notion that plaintiff's standing as a merchant would be affected, if he were to put on record a deed for movable property bought on credit, it was suggested to cancel it and to write another, changing the terms from credit to cash; the notes as originally made remained outstanding (corresponding with the terms of the deed canceled) between the plaintiff and his vendor. The record discloses that the advice to change to a cash sale was given in good faith by an officer of the locality, whose uprightness is entirely above question.

The notes were unquestionably paid at maturity.   Two of these notes were by the holder, discounted by the defendant bank, and by it were collected.   It seems, however, that the bank, at the time was not aware of the consideration.   The fact remains that they were all paid.   The error of description under the circumstances made evident by the record is not evidence of simulation.   The defendants were not the creditors of the vendor; they became his creditors only some six months after the sale.   The price having been paid we are decidedly of the opinion that the defendants can not sustain their theory that the sale was fictitious, nor that the

16

sale between the parties was merely nominal. This sale was made some time prior to the origin of the indebtedness of the vendor to the defendants. The facts do not establish that it was intended as a basis for future acts of fraud and wrong-doings whereby they might enrich themselves at the expense of their creditors, as contended by the defendants. The failures alleged, and the irregularities of which it is charged that the vendor and the plaintiff had been guilty some time prior, are too remote to have any bearing upon the sale to prove the conspiracy charged. They must be judged by circumstances contemporaneous, or connected in some way with the transactions. In so far as relates to the sale, we find no evidence to excite suspicion that the motive was as charged.

But whatever may have been the motive of the debtor in regard to his creditors, it is not shown that the plaintiff was a mere interposed party without a title. All the evidence points to the truth of the averment that he had actually paid the price.

### ALLEGED ATTEMPT TO SCREEN GOODS.

This being our conclusion in regard to the sale of February, 1894, another branch of the case is before us for decision. The defendants urge that at the time they levied attachments against their debtor, Marder, he had placed in plaintiff's store a quantity of goods, bought from them, for which he had not paid; that they were in reality the goods of their debtor, Marder.

We think that there should be additional evidence heard and further examination made.

During the trial questions were propounded to the vendor, Marder. They were ruled out by the court on the ground that the answers sought were declarations made out of the presence of the vendee.

The jurisprudence of this State has excluded the application of the general rule announced, in cases of fraud and simulation.

" The conduct and declarations of both parties to a written agreement may be admitted to prove a fraudulent simulation. Such is also the rule of the common law."

Davis vs. Stern, 15 An. 177.
Cannon vs. White, 16 An. 85.
Bushnell vs. Bank, 20 An. 464.
Ray vs. Harris, 7 An. 138.
Erwin vs. Bank, 5 An. 1.

If the plaintiff, Unter, was only seeking to screen goods of Marder not included in the sale of February, 1894, it follows that he had no right whatever, and that it was possible to attach the goods, and the rule admitting the testimony, heretofore excluded, applies. The circumstances are exceptional. This witness was examined out of court by defendants' counsel under the article of the Revised Statutes, which authorizes such examination. Prior to concluding the examination of witnesses at chambers, he left the State and did not, as required by the article in question, sign his depositions and enable counsel to close the taking of his testimony. On the trial the defendants declined to offer the depositions. They were offered by and admitted at the instance of plaintiff.

The relations between defendants' counsel and the witness were not such as to preclude them from propounding the questions excluded below.

### DEPOSITIONS OUT OF COURT UNDER SECTION 489 REVISED STATUTES.

We affirm the court's ruling in permitting the Unter depositions to be filed and read in evidence, and in refusing to order him to answer interrogatories. He had been examined at length by defendants' counsel, by whom he was called as a witness, and although he was present during the trial, the evidence having been taken for the trial and being part of the proceedings was admissible.

### FACTS NOT RELEVANT.

The interrogatories offered as on facts and articles also were properly excluded, for the evidence sought had no direct bearing upon the issues here involved.

The facts sought to be proved were not connected with the issues. The alleged wrongs committed by Unter at a time long prior to the sale to him and prior to his business relations with any of the parties in interest, was not admissible as evidence.

### CAUSE SUFFICIENT TO REMAND THE CASE.

We do not desire unnecessarily to restrict the issue. With the light before us, we must state that we have not discovered cause sufficient to decree the sale of February, 1894, fictitious; if other evidence which may be admitted on the new trial have no more bearing

and is not more conclusive, we leave this branch of the case, firmly convinced of the correctness of our previously expressed conclusion.

Our learned brother of the District Court reserved to the defendants the right to sue for and receive the goods in plaintiff's store alleged to belong to the debtor.

The proceedings may as well be prosecuted to a close, granting or rejecting the demand in this case, and for that purpose the case is remanded.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, reversed and avoided.

It is ordered that the case be remanded to the District Court for trial in accordance with the views herein expressed.

### ON APPLICATION FOR REHEARING.

After having analyzed the facts, we thought that evidence, in addition to that before us, should be heard in the lower court. In consequence, the judgment was annulled; the case *was not dismissed*, but remanded for further examination, and a judgment in the lower court, after hearing, and such other legal steps as the respective rights of the parties might demand.

In regard to costs, the general rule is that one cast on appeal must pay the costs of appeal. The appellee, who would have had to pay the costs on appeal if we had applied the rule, has no cause of complaint.

Under the exceptional circumstances of this case, we applied the rules announced in Wilkinson vs. Martin, 13 An. 479.

Rehearing refused.